HORNBLOWER & WEEKS, Respondent, *v.* ELEANOR B. SHERWOOD, Appellant; THE SHERIFF OF THE CITY OF NEW YORK et al., Respondents, et al., Defendants.

Argued March 11, 1954; decided June 3, 1954.

*Sidney G. Kingsley* and *Charles L. Sylvester* for appellant. I. The order of January 4, 1932, was a final order in a special proceeding and was therefore a judgment within the meaning of section 44 of the Civil Practice Act. Under that statute, payment of the fine imposed by the final order is conclusively presumed to have been made after the lapse of twenty years from the date of its entry. (*Matter of Barnes,* 204 N. Y. 108; *People ex rel. Hastings* v. *Hofstadter,* 258 N. Y. 425; *Moore* v. *Moore,* 143 App. Div. 428, 208 N. Y. 97; *Hosack* v. *Rogers,* 11 Paige

Ch. 603; *Continental Mtge. Guar. Co.* v. *Whitecourt Constr. Corp.*, 164 Misc. 56; *Koenig* v. *Eagle Waist Co.*, 176 App. Div. 724; *Matter of Douglas* v. *Adel*, 269 N. Y. 144; *People ex rel. Negus* v. *Dwyer*, 90 N. Y. 402; *Matter of City of New York* [*Elm St.*], 239 N. Y. 220; *Matter of Lexington Ave.* [*No. 2*], 30 App. Div. 609.) II. Since sequestration is a possessory process, service of the order of sequestration and of the final order on Hornblower & Weeks did not, in the absence of an applicable statute, constitute a " levy " or give rise to any " lien ", and the property in the hands of Hornblower & Weeks was never *in custodia legis. (Erdheim* v. *Mabee, 305* N. Y. 307; *Baker* v. *Hull,* 250 N. Y. 484; *Wood* v. *Dock & Mill Co.*, 193 App. Div. 236; *Moran Towing & Transp. Co.* v. *Fleming,* 287 N. Y. 571; *Simpson* v. *Jersey City Contr. Co.*, 165 N. Y. 193; *Warner* v. *Fourth Nat. Bank,* 115 N. Y. 251; *Ajax Craftsmen, Inc.*, v. *Whinston,* 269 N. Y. 7; *Agar* v. *Orda,* 264 N. Y. 248; *First Nat. Bank of Boston* v. *Maine,* 284 U. S. 312.)

*Nathaniel L. Goldstein, Attorney-General (Abe Wagman, Wendell P. Brown* and *Irving L. Rollins* of counsel), for People of the State of New York, respondent. I. One, who seeks to use the Statute of Limitations as a shield against a just claim, must bring himself squarely within the statute. The limitation contained in section 44 is expressly made applicable only to a " judgment or decree." The contempt order imposing a fine on Sherwood was not a judgment or decree either within the literal meaning or intent of section 44. (*Matter of Murray,* 272 N. Y. 228; *Maguire* v. *Yellow Taxicab Corp.*, 253 App. Div. 249; *Matter of Douglas* v. *Adel,* 269 N. Y. 144; *People ex rel. Rochester, Syracuse & Eastern R. R. Co.* v. *Moroney,* 224 N. Y. 114; *Matter of Gibson,* 195 N. Y. 466; *Matter of Lexington Ave.* [*No. 2*], 30 App. Div. 609; *Warren* v. *Garlipp,* 217 App. Div. 55; *Matter of Foote,* 129 Misc. 2; *Matter of Schoenewerg,* 277 N. Y. 424; *People ex rel. Munsell* v. *Court of Oyer & Terminer,* 101 N. Y. 245.) II. A fine imposed as punishment in a criminal contempt proceeding does not come within the purview of section 44, even if the provision be construed to include an order in a special proceeding. (*People ex rel. Backus* v. *Spalding,* 10 Paige Ch. 284, 7 Hill 301, 45 How. [U. S.] 21; *Stewart* v. *Smith,* 186 App. Div. 755; *Burbank* v.

*Fay,* 65 N. Y. 57; *Matter of Koronsky,* 170 F. 719; *Matter of Hall,* 170 F. 721; *Matter of McRoberts,* 17 F. Supp. 82; *Matter of Spagat,* 4 F. Supp. 926; *Matter of Thomashefsky,* 51 F. 2d 1040; *People ex rel. Otterstedt v. Sheriff of Kings Co.,* 206 F. 566.) III. A fine imposed under section 406-a of the Civil Practice Act is not subject to section 44 since it runs in favor of the People of the State of New York. If this be denied, it must necessarily follow that section 44 is tolled by Sherwood's continued absence from the State. (*Brinkman v. Cram,* 175 App. Div. 372, 225 N. Y. 720; *People v. Gilbert,* 18 Johns. 227; *People v. Herkimer,* 4 Cow. 345; *Matter of Gewertz v. Berry,* 258 N. Y. 505; *Jacobs v. Del Genovese,* 179 App. Div. 163; *Matter of New York Univ.* [*Moore*], 271 App. Div. 131, 296 N. Y. 913; *Connecticut Mut. Life Ins. Co. v. Moore,* 297 N. Y. 1, 337 U. S. 551.) IV. Even if section 44 be deemed applicable to the fine imposed upon Sherwood, the presumption of payment therein contained is not conclusive in this case since part payment has been made by Sherwood within the meaning of the section as judicially construed. (*Moran Towing & Transp. Co. v. Fleming;* 261 App. Div. 978, 287 N. Y. 571.) V. Even if section 44 is fully applicable, it simply bars the institution of a new action or a new proceeding for the enforcement of the final order. It does not render nugatory any proceeding instituted, or lien acquired, during the twenty-year period. The impleaded property having been levied upon, and constructive seizure having been made, during the twenty-year period, the statute does not bar its turnover and sale for the payment of the fine. (*House v. Carr,* 185 N. Y. 453; *Harvey v. Guaranty Trust Co.,* 134 Misc. 417, 229 App. Div. 774, 256 N. Y. 526; *Continental Bank & Trust Co. v. Tanager Constr. Corp.,* 193 Misc. 245, 276 App. Div. 988, 302 N. Y. 663; *Matter of Slote,* 188 Misc. 144; *Matthews v. Matthews,* 240 N. Y. 28; *Van Rensselaer v. Wright,* 121 N. Y. 626; *Barnard v. Onderdonk,* 98 N. Y. 158; *Matter of City of New York* [*Walton Ave.*], 244 App. Div. 125, 270 N. Y. 513.) VI. It is within the power of a court of equity to deny to a litigant the benefit of the Statute of Limitations. Aside from all else, both Sherwood and his wife should be estopped from using the statute as a shield. In any event, they should not be granted any affirmative relief. (*Dodds v. McColgan,* 229 App. Div. 273; *Shohfi v. Shohfi,* 303

N. Y. 370; *Small* v. *Housman,* 208 N. Y. 115; *Matter of O'Byrne,* 55 Hun 438, 121 N. Y. 675; *Johnson* v. *Albany & Susquehanna R. R. Co.,* 54 N. Y. 416.)

CONWAY, J. In March of 1931, a joint legislative committee had been appointed to investigate the affairs of the City of New York. The committee caused a subpœna to be issued for the appearance of one Russell T. Sherwood so that testimony might be obtained from him. Upon his failure to obey the subpœna a proceeding was instituted on October 30, 1931, under section 406-a of the Civil Practice Act to punish Sherwood, who had placed himself beyond the jurisdiction of the State, for contempt. The order required Sherwood to show cause why he should not be punished and directed under section 406-a that his property in the State to the amount of $100,000 " be levied upon and seized by the Sheriff " and held to satisfy any judgment rendered against him in the proceeding. That order was served at once on the plaintiff in this interpleader action, Hornblower & Weeks, a brokerage firm. The service was recorded in the " Attachment and Replevin Register " of the Sheriff of New York County. Hornblower & Weeks informed the Sheriff that Sherwood's account showed that a balance was due plaintiff " against which plaintiff was carrying the stocks then in the account ". The Sheriff also served copies of the order of October 30, 1931, upon banks and brokerage firms other than plaintiff which had possession of Sherwood's property and from them some $8,000 was collected.

Thereafter an order was entered on January 4, 1932, sustaining the charge of recusancy against Sherwood and imposing a fine of $50,000 and costs. The order further provided that the fine " be satisfied, unless paid, by a sale of, and out of, the property of the said Russell T. Sherwood *heretofore seized and levied upon* by the Sheriff of any County of the State of New York, pursuant to the order　*　*　*　dated October 30, 1931 *　*　*.*" (Emphasis added.) The order of January 4, 1932, further provided that Sherwood " be confined in close custody in the County Jail of the County in which he shall be apprehended, there to remain until the said fine of $50,000 shall be paid to the Comptroller of the State of New York for the benefit

of the People of the State of New York and he shall have submitted to examination as a witness before the said Joint Legislative Committee  *  *  *.''

This then was not a fine for a civil contempt by way of indemnity for the benefit of a private litigant but a fine as punishment for a public or criminal contempt. This was a fine for flouting the power of the Legislature of a sovereign State — the power of one of the three co-ordinate branches of government — which had called for aid upon another co-ordinate branch of government — the judiciary. No better language to describe a criminal contempt, such as that found here may be found than that of our court in *People ex rel. Munsell* v. *Court of Oyer & Terminer of County of N. Y.* (101 N. Y. 245, 248–249) as follows: '' The second class of contempts consists of those whose cause and result are a violation of the rights of the public as represented by their constituted legal tribunals, and a punishment for the wrong in the interest of public justice, and not in the interest of an individual litigant. In these cases if a fine is imposed its maximum is limited by a fixed general law, and not at all by the needs of individuals; and its proceeds when collected go into the public treasury and not into the purse of an individual suitor. The fine is punishment rather than indemnity, and if imprisonment is added, it is in the interest of public justice and purely as a penalty, and not at all as a means of securing indemnity to an individual. Necessarily these contempts in their origin and punishment partake of the nature of crimes, which are violations of the public law, and end in the vindication of public justice; and hence are named criminal contempts. As described in the statute, an element of willfulness, or of evil intention enters into and characterizes them. They are a disturbance of the court which interferes with its performance of duty as a judicial tribunal; willful disobedience to its lawful mandate; resistance to such mandate willfully offered; contumacious and unlawful refusal to be sworn as a witness, or to answer a proper question; and publication of a false and grossly inaccurate report of its proceedings. These cases and their punishment are placed under the head of ' general powers of the courts and their attributes; ' and they very evidently relate to public offenses tending to

cast discredit upon the administration of public justice, and having no reference to the particular rights of suitors. But here again we find that they occur as well in civil as in criminal actions, and so, for convenience, we may speak of them in view of the present classification, as public contempts, although the established legal nomenclature must remain unchanged.''

A certified copy of the order of January 4, 1932, was immediately served by the Sheriff upon the plaintiff. Within a few days thereafter the Sheriff made demand on plaintiff, stating that a writ of attachment had been served on plaintiff on October 30, 1931, and demanding that plaintiff turn over property or money in its possession belonging to Russell T. Sherwood. Plaintiff wrote calling attention to its previous letter advising that Sherwood's account showed a balance due to plaintiff. Three years later the plaintiff notified the Sheriff that the account showed a credit balance of some $3,000. That was not collected. Until the commencement of this action, the Sheriff took no further action. Sherwood has never been apprehended and has given no testimony. There is now a balance due Sherwood of some $38,000.

On September 24, 1952, Sherwood assigned his interest in '' his account with plaintiff '' to his wife who demanded that the property be turned over to her. She concedes that the assignment was accepted with the knowledge of the prior proceedings. This interpleader action followed. Summary judgment and judgment on the pleadings were rendered for defendants-respondents and affirmed below.

The proceeding resulting in the order of January 4, 1932, was a civil special proceeding resulting in a final order. The appellant concedes that and we are all agreed upon it. (*People ex rel. Rochester, Syracuse & Eastern R. R. Co.* v. *Moroney,* 224 N. Y. 114, 124; *Matter of Gibson,* 195 N. Y. 466.) The appellant insists, however, that, although a final order in a special proceeding, it is a judgment within the meaning of section 44 of the Civil Practice Act and is now conclusively presumed to have been paid after the expiration of a period of twenty years from January 5, 1932.

Section 44 of the Civil Practice Act reads as follows: " *When satisfaction of judgment presumed.* A final judgment or decree for a sum of money or directing the payment of a sum of money, rendered in a court of record within the United States or elsewhere, or a judgment of a court of this state not of record docketed in a county clerk's office upon a transcript filed therein pursuant to law, is presumed to be paid and satisfied after the expiration of twenty years from the time when the party recovering it was first entitled to a mandate to enforce it. This presumption is conclusive, except as against a person, who within twenty years from that time makes a payment or acknowledges an indebtedness of some part of the amount recovered by the judgment or decree, or his heir or personal representative, or a person whom he otherwise represents. Such an acknowledgment must be in writing and signed by the person to be charged thereby. A person may avail himself of the presumption created by this section under an allegation that the action was not commenced, or that the proceeding was not taken, within the time therein limited."

The words of the statute are " judgment or decree ". They were words of art when written and concededly did not mean nor include a final " order ". They were written originally into statute law before the first Code of Civil Procedure in 1848 because of which it came to pass thereafter that actions ended in judgments and special proceedings ended in final orders. It has been so since. Yet we have had a second Code of Civil Procedure adopted in 1876 and 1880 (1 Carmody-Wait on New York Practice, pp. 3, 4) and later our Civil Practice Act but the Legislature has never, in all of those enactments over the years, amended section 44 so as to provide that its applicability should extend also to a final order in a special proceeding. (See *Warren* v. *Garlipp*, 217 App. Div. 55.)

It is not that the People and the Legislature overlooked the fact that the Code of 1848 had made a change. The Legislature could have amended the language of what is now section 44 of the Civil Practice Act so as to add the word " order " but it was not required to do so unless it thought the amendment necessary or advisable. Before 1848 and the abolition of the distinction between actions at law and suits in equity, the Legis-

lature, when it thought it necessary or advisable, provided for the filing of an order and the consequent docketing of it " as if the same was the transcript of a judgment " and that a certified copy of such order together with other papers " shall be the judgment record ", and that such judgment should be a lien on real estate. (L. 1844, ch. 315, § 8; *Gildersleeve* v. *People,* 10 Barb. 35, 43; *People* v. *Lott,* 21 Barb. 130, 142; Code Crim. Pro., §§ 593, 595; *People* v. *Wirtschafter,* 305 N. Y. 515, 519.) That has never been changed to date. So also after 1848, when the Legislature saw the necessity for providing that an order might be " deemed a judgment " or " docketed as a judgment ", it so provided. Thus in section 773 of the Civil Practice Act it is provided: " A decree or order awarding the payment of money shall be *deemed a judgment* for the purpose of this article." (Emphasis supplied.) The article is the one dealing with supplementary proceedings. So also as to condemnation proceedings. Section 17 of the Condemnation Law (derived from Code Civ. Pro., § 3373) specifically provides that the final order in the condemnation proceeding " shall be docketed as a judgment  *  *  *  and it shall have all the force and effect of a money judgment  *  *  *." Again in section 1332 of the Civil Practice Act, prior to the enactment of article 78 of the Civil Practice Act, the Legislature made specific provision that in a mandamus proceeding " *  *  *  the final order is deemed to be a final judgment  *  *  *." Finally, as continuing the pointed distinction between judgments and orders, except when otherwise specifically provided, the People amended the Constitution and the Legislature amended the Civil Practice Act recently so as to provide for both judgment or order absolute (N. Y. Const., art. VI, § 7; Civ. Prac. Act, § 588, subd. 3) when prior thereto there had been provision only for judgment absolute. (See Tenth Annual Report of N. Y. Judicial Council, 1944, p. 369 *et seq.*)

We must read and follow the plain words of the statute as enacted by the Legislature more than a century ago and never changed. Section 44 of the Civil Practice Act applies a fiction of payment to judgments or decrees in favor of litigants where ordinary money claims have been adjudicated and in other litigation specifically provided for by legislation. It fits into

the pattern of government exemplified by the maxim: " It concerns the welfare of a state that an end be put to litigation ". (Co. Litt. 303.) It was passed by the Legislature to end litigation where successful litigants had slept on adjudications in their favor for twenty years. Appellant would have us write into the statute the word " order ", which the Legislature has omitted, and then apply it, when thus amended, to a situation where we do not think it may properly be said that the Legislature intended to create a fiction of payment so as to presume satisfaction of a claim of the State to a fine in a criminal contempt proceeding imposed to vindicate an affront to the power and authority of the same Legislature when the failure to reduce to possession property available to pay the fine in part was the result of inaction — not by the party litigant — but by employees of the Sheriff over a period of more than twenty years.

I concur also in the concurring memorandum of Judge FROESSEL as to sections 10 and 54 of the Civil Practice Act.

The judgment should be affirmed, with costs.

FROESSEL, J. (concurring). I concur in the opinion of Judge CONWAY for affirmance and upon the following additional ground:

Section 54 of the Civil Practice Act, so far as pertinent, provides: " The limitations prescribed in this article for *actions* * * * apply alike to *actions* brought in the name of the people of the state, or for their benefit, and to actions by private persons " (emphasis supplied). The State has thereby surrendered its immunity in this respect only as to " actions ". The contempt order in this case was not obtained in any *action*, resulting in a judgment or decree. Nor is it " necessary " in this contempt case to construe the word " action " as " including a special proceeding ", as is provided in section 10 of the Civil Practice Act, to the detriment of the People of the State of New York. The surrender of the State's immunity is not to be so lightly implied. As we said in *Smith* v. *State of New York* (227 N. Y. 405, 410): " The liability of the state has not been enlarged and it is not true that whenever an individual is liable for a certain act the state is liable for the same act. (*Barrett* v. *State,* 220 N. Y. 423.) * * * In the absence of

a legislative enactment specifically waiving this immunity, the state cannot be subjected to a liability therefor."

We should adhere to the strict statutory definition. (*Warren v. Garlipp*, 217 App. Div. 55.)

LEWIS, Ch. J. (dissenting). Our dissent from the decision about to be made has as its basis the following facts:

The plaintiff Hornblower & Weeks, a partnership, holds under a contract as pledgee certain securities of value in excess of $30,000 which on April 8, 1926, and thereafter until September 24, 1952, were the property of the defendant Russell T. Sherwood (hereinafter referred to as Sherwood). On the date last mentioned Sherwood assigned to his wife, the defendant Eleanor B. Sherwood, all of his right, title and interest in his contract as pledgor with the plaintiff. Meantime, on October 30, 1931, the Sheriff of New York County served upon the plaintiff a certified copy of a Supreme Court order directing Sherwood to show cause why he should not be adjudged in contempt for his refusal to appear before a joint legislative committee appointed to investigate the administration and conduct of various departments of the City of New York, and directing further that property in the amount of $100,000 within the State of New York be levied upon and seized by the Sheriff, and held to satisfy any judgment that might be rendered against Sherwood in the contempt proceeding. On January 5, 1932, the Sheriff of New York County served upon plaintiff a certified copy of a Supreme Court order dated January 4, 1932, made in accord with section 406-a of the Civil Practice Act, adjudging Sherwood in contempt for refusal to appear before the legislative committee mentioned above, ordering him to pay a fine of $50,000, and directing that, in the event of his failure to make such payments, such fine be satisfied out of any property seized and levied upon in accord with the Supreme Court order dated October 30, 1931. Thereafter, on January 13, 1932, the Sheriff made demand on plaintiff that it turn over to him all property or money belonging to Sherwood then in its possession. The plaintiff did not then comply with that demand, nor has it since turned over to the Sheriff any money or property belonging to Sherwood, although it has been advised of the assignment men-

tioned above made by Sherwood to his wife. Instead, the plaintiff has instituted the present interpleader action in which it makes no claim to Sherwood's property which it holds as pledgee, except for its counsel fees, its disbursements, its costs and any expense connected with its transfer of stocks to the person adjudged herein to be entitled thereto. The judgment sought herein by the plaintiff is that the court determine and enforce the right, title and interest of the various defendants whose interests are adverse.

We thus reach a consideration of the legal consequences of the following additional facts: Although, as we have seen, the plaintiff has failed to comply with the Supreme Court order which demanded that it turn over to the Sheriff the property of Sherwood which it holds as pledgee, the Sheriff — whose duty it was in 1932 and thereafter, under court order, to levy upon and seize such property — has taken no steps to gain possession thereof and has since made no effort to that end.

Thus was the contempt proceeding dormant for a period in excess of twenty years, until December 11, 1952, when the plaintiff instituted the present interpleader action. It is that quiescent period in excess of twenty years which, in our view, makes applicable the following provisions of section 44 of the Civil Practice Act: " *A final judgment or decree for a sum of money or directing the payment of a sum of money,* rendered in a court of record within the United States or elsewhere, or a judgment of a court of this state not of record docketed in a county clerk's office upon a transcript filed therein pursuant to law, *is presumed to be paid and satisfied after the expiration of twenty years from the time when the party recovering it was first entitled to a mandate to enforce it. This presumption is conclusive,* except as against a person, who within twenty years from that time makes a payment or acknowledges an indebtedness of some part of the amount recovered by the judgment or decree, or his heir or personal representative, or a person whom he otherwise represents. Such an acknowledgment must be in writing and signed by the person to be charged thereby * * * " (emphasis supplied).

We agree with the statement in the majority's opinion that " The proceeding resulting in the order of January 4, 1932, was

a civil special proceeding resulting in a final order." We do not agree with the majority's position that the time limitation of twenty years contained in section 44 of the Civil Practice Act applies only against a " judgment or decree," and does not bar the enforcement of the order of January 4, 1932.

After a long succession of enactments, by which the bases for time limitations affecting litigation of various types has been changed from common-law to statutory rules, the Legislature finally brought together in article 2 of the Civil Practice Act a complete scheme of time limitations applicable to all civil remedies. The scope of article 2 is defined in section 10 (formerly Code Civ. Pro., § 414) which provides in part: " 10. *Application of article.* The provisions of this article apply and constitute the *only* rules of limitation applicable to a civil action or *special proceeding* \* \* \*." There follows in section 10 — after two exceptions not relevant to our present problem — " The word ' action ' contained in this article is to be construed, when it is necessary so to do, *as including a special proceeding or any proceeding therein or in an action.*" (Emphasis supplied, and see *Conyngham* v. *Duffy,* 125 N. Y. 200, 202; *Matter of Rogers,* 153 N. Y. 316, 321.)

It is also of interest to note that to assure completeness in its statutory fixation of time limitations applicable to legal remedies, the Legislature — after prescribing limits applicable to a wide field of remedies — has provided in section 53 of article 2: " *Limitation where none specially prescribed.* An action, the limitation of which is not specifically prescribed in this article, must be commenced within ten years after the cause of action accrues."

Thus, if the twenty-year Statute of Limitations is not applicable to the present case, it would seem that the omnibus ten-year statute would apply.

As a counsel of caution in the realm of statutory construction Mr. Justice CARDOZO, writing for the court in *Van Beeck* v. *Sabine Towing Co.* (300 U. S. 342, 351) reminded us that " ' The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' " That statement is in accord with this court's admonition (per POUND, J.) in *Matter*

*of City of New York (Elm St.)* (239 N. Y. 220, 225): " The statute [of limitations] is one of repose. The court may not pervert its purpose in order to avert an unjust result."

Reading section 44 of the Civil Practice Act in the light of section 10 (*id.,* quoted *supra*), we find statutory warrant for our conclusion that, when the period of twenty years had elapsed after service upon the plaintiff of the Supreme Court order of January 4, 1932, without further legal action by the Sheriff during that twenty-year period to enforce that order, section 44 became legally effective to bar such enforcement.

Accordingly, we dissent and vote to reverse the judgment and to deny the motions made on behalf of the People of the State of New York. The matter should be remanded to Special Term with directions to cause delivery to the appellant of property now in possession of the plaintiff to which the appellant may be legally entitled, with costs to plaintiff in all courts and its expenses incident to such delivery payable out of the property held by the plaintiff as pledgee, or its proceeds.

DESMOND and FULD, JJ., concur with CONWAY, J.; FROESSEL, J., concurs for affirmance in separate memorandum; LEWIS, Ch. J., dissents in opinion in which DYE and VAN VOORHIS, JJ., concur.

Judgment affirmed.